UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF NORTH DAKOTA, <br><br>Plaintiffs, <br><br>v. <br><br>BELLE FOURCHE PIPELINE COMPANY, <br><br>Defendant. | Civil No: 1:22-cv-00089-DLH-CRH |

### ORDER AND INITIAL STIPULATION REGARDING DISCOVERY PROCEDURE

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

1

WHEREAS, the Parties have agreed to certain measures to streamline discovery procedures and are continuing to negotiate additional stipulations regarding discovery matters, which they hope to include in a supplemental or amended stipulation regarding discovery procedure;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

**A.**     **502(d) Order.**

1.     This Order invokes Rule 16(b) of the Federal Rules of Civil Procedure, as well as the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) do not apply to the disclosure of communications or information in discovery in this matter.

2.     The prosecution and defense of this action will require each Party to review and to disclose large quantities of information and documents, including electronically stored information, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

3.     Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the

party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in connection with this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding, whether judicial, arbitral, or administrative—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

4. The Court further orders that because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional, inadvertent, and compelled by order of this Court. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials.

5.      Regardless of whether the procedures to screen out privileged materials were reasonable, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation.

6.      If a Party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing Party shall, within 14 days of making such a determination, give all counsel of record written notice of the claim of privilege.  The notice must identify each such document and the date it was produced.  If the producing Party claims that only a portion of a document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

7.      If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege.  Such notification will not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document.  If the Party holding the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice in accordance

with Paragraph 6 above within five business days of receiving notice from the identifying Party.

8. Upon receiving notice of a claim of privilege on a produced document, the receiving Party shall, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and shall not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party shall take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it shall take reasonable steps to prevent further use of such information until the claim is resolved.

9. Notwithstanding the duties under Rule 26(b)(5)(B), absent an order expressly stating otherwise, a party may make derivative use of, and may pursue leads suggested by, any inadvertently produced privileged information known to the party before duty arose to return, sequester, or destroy the privileged information. The receipt of inadvertently disclosed privileged information shall not be the basis for disqualifying counsel from this action absent a showing of bad faith in receiving the information.

10. If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall, within 14 days after receiving notice of the claim of privilege as to a produced document, move the Court for an order compelling disclosure of the information. The Party shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B) and shall not assert, as a ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

11. The Parties may stipulate in writing to extend the time periods specified above.

12. Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

13. The Party wishing to assert a claim of privilege retains the burden, upon challenge, of establishing the applicability of the claimed privilege.

14. This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

B.  **Production.**

15.  Procedures for Production:  Unless stated otherwise in a written agreement signed by both parties, the following procedures apply to producing documents or ESI. Nothing in this Order requires previously produced documents, including, without limitation, documents produced in response to Information Requests, to be reproduced or produced in a different format or with different or additional metadata. However, if those previously produced documents were produced without the metadata contemplated in Appendix A or in a different format and Plaintiff believes an additional production is reasonable given the circumstances, the Parties will meet and confer about a reasonable production of the relevant metadata or documents in a different format. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

(a)  TIFF Plus Text Productions. Except as stated otherwise below, ESI being produced by a Party shall be converted to 300 dpi, single-page, black-and-white (no shades of gray) TIFF images using CCITT Group IV compression. Where color images are required by this order, the images shall be in the form of .JPG images. Each page must be branded with a unique Bates number, which must not be an overlay of the image. Unless otherwise agreed by the Parties, the TIFF images must be produced on optical media, USB hard drive, or by secure online file transfer,

accompanied by: (1) an Opticon™ or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file (or JPG image file for color images) and extracted text file; (2) a "load file" containing each of the applicable metadata fields described in Appendix A; and (3) Concordance® delimited text files containing extracted or OCR text. The load file must contain Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document. Nothing in this stipulation requires a Party to populate a metadata field in Appendix A (other than "Custodian" and "MD5Hash") if such fields cannot be extracted from a document.

   (b) Paper documents.

   (1) Documents printed on paper that is larger than 11 x 17 inches may, at the Producing Party's discretion, be produced on paper. Documents produced on paper must be organized by custodian and maintained in the order in which they appear in the files of the custodian.

   (2) Documents printed on paper that is 11 x 17 inches or smaller must be scanned and produced on CD-ROM, DVD-ROM, or external hard drive.

   (c) Word, WordPerfect, and PDF files.

>              (1)    For Word, WordPerfect, and PDF files, the text files must contain the extracted text from the document, unless the document has been redacted during privilege review, in which case the text files may contain OCR text.

>              (2)    For Word, WordPerfect, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated based on how the document appears when first opened using view settings contained in the file. The receiving party has the option, after reviewing the produced TIFF image, to request the native file.

>       (d)    Microsoft PowerPoint files must be processed and produced as full color, half page, JPEG images with one slide per page.  Any presenter notes must appear below each slide.

>       (e)    E-mail.

>              (1)    If the producing party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text.

>              (2)    E-mail attachments must be processed as though they were separate documents, and the load file must include a field in which the producing Party identifies, for each e-mail, the Bates range of any attachment;

>       (f)    Microsoft Excel files and other spreadsheets must be produced in native file format in a separate folder on the production media. The load file must contain a field that identifies the file path of the native file corresponding to each

document, and the Parties must provide a placeholder TIFF image that shows the name of the native file and has a Bates number. If an MS Excel or other spreadsheet file contains privileged text that must be redacted before production, the producing party will image the redacted spreadsheet showing all non-privileged hidden columns and provide OCR text for the file.

       (g)    Digital photographs must be produced as full color .JPG image files at their original resolution with Bates numbers branded onto them.

       (h)    Microsoft OneNote files may be converted to PDF files prior to processing, review, and production. The Parties need not collect or produce an entire OneNote notebook if only certain sections or pages in the notebook are responsive.

       (i)    GIS maps that are contained in a folder (with or without subfolders) may, at the Producing Party's discretion, be converted to a single ZIP file that contains all of the contents of that folder, even if the folder contains certain files types (e.g., JPG images) that would ordinarily be produced using different procedures pursuant to this Paragraph. The Producing Party must provide a placeholder TIFF image that shows the name of the ZIP file and has a Bates number. After production of the ZIP file, the receiving party may initiate a meet and confer about whether any files contained with the ZIP file should be produced as separate documents with their own Bates numbers.

(j) With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Producing Party may produce the ESI in native format or a reasonably usable form, or may initiate a meet-and-confer to determine a reasonably useable form for the production. If the file is not one of the types described above, the Producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number. If the Parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production.

16. The receiving party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

17. Except as stated above, a Party need not produce the same electronically stored information in more than one form.

**C.   Expert Discovery.**

18. Each Party shall not pursue through discovery, trial subpoena or otherwise:

(a) Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

(b) Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not

limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

    (1)    Relate to compensation for an expert's study or testimony;

    (2)    Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

    (3)    Identify assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

19.    Expert Depositions.

    (a)    Notwithstanding Fed. R. Civ. P. 26(b)(4)(E), the Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

20.    Expert Productions.

    (a)    Documents "considered" by expert for the purposes of Fed. R. Civ. P. 26(a)(2)(B)(ii) means those documents that have been received, read, reviewed, or created by the expert for the purposes of forming the opinions set forth in the expert's report but only if the expert actually relies upon them in forming his or her opinion.

(b) Documents "considered" by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be produced within seven days after producing the witness's report. Such documents shall be produced in accordance with the requirements of this order, except that the Parties shall identify which witness(es) considered each document either in the load file produced along with the documents or in the witness' report. However, the Parties do not need to produce: (1) copies of documents that were previously produced in this matter, provided that the Party identifies the documents by Bates number before the expiration of the seven-day period described in this subparagraph; (2) copies of documents considered by experts that are publicly available (e.g., published materials one might find in a library), unless it would be less burdensome for the producing party to obtain a copy than it would be for the receiving party, and the receiving party requests a copy after receiving the expert report. All such requests shall be fulfilled within 10 days.

(c) Notwithstanding the provision of Fed. R. Civ. P. 26(a)(2)(B)(iii), the experts' disclosures under Rule 26(a)(2) need not include demonstrative exhibits the expert may use at trial, provided that the facts and data supporting such trial demonstrative exhibits have been disclosed in the experts' report or in the documents considered by that witness. Each party agrees to provide the other parties with copies of any demonstrative exhibits before they are used at trial. The parties will seek to reach agreement on how long before trial demonstrative exhibits must be exchanged.

If the parties are unable to reach agreement, one or more parties may ask the Court to set a deadline for exchanging copies of demonstrative exhibits.

SO ORDERED this 29th day of August, 2022.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

**APPENDIX A**

| # | Field | Description |
|---|---|---|
| 1 | **Bates Beg** | The beginning Bates number to a document. |
| 2 | **Bates End** | The ending Bates number to a document. |
| 3 | **Bates Beg Attach** | The beginning Bates number to an attachment group. |
| 4 | **Bates End Attach** | The ending Bates number to an attachment group. |
| 5 | **Author** | The document author. |
| 6 | **Custodian** | The individual or entity who is in possession, custody or control of documents and/or data. |
| 7 | **Email From** | The name/email who sent the specific email message. |
| 8 | **Email To** | The recipients of an email. |
| 9 | **Email CC** | Carbon Copy recipients of an email. |
| 10 | **Email BCC** | Blind Carbon Copy recipients of an email. |
| 11 | **Email Subject** | Subject of email or electronic document. |
| 12 | **File Name** | The name of the file. |
| 13 | **File Size** | The size of the specified file. |
| 14 | **Document Extension** | The two-, three-, or four-letter extension that identifies the application that created the document. |
| 15 | **Date Created** | The application record date the file was created. The Parties reserve the right to argue that automatically extracted "date created" metadata is inaccurate for a given production. |
| 16 | **Date Last Modified** | The application record date the file was last modified. The Parties reserve the right to argue that automatically extracted "date last modified" metadata is inaccurate for a given production. |
| 17 | **Date Sent** | The date captured by mail client when email was sent. |
| 18 | **Date Received** | The date captured by mail client when email was received. |
| 19 | **Time Created** | The application record time the file was created. Any party may elect to produce this metadata in one field with the "date created" metadata. |
| 20 | **Time Last Modified** | The application record time the file was last modified. Any party may elect to produce this metadata in one field with the "date last modified" metadata. |
| 21 | **Time Sent** | The time captured by mail client when email was sent. Any party may elect to produce this metadata in one field with the "date sent" metadata. |
| 22 | **Time Received** | The time captured by mail client when email was received. Any party may elect to produce this metadata in one field with the "date received" metadata. |
| 23 | **MD5 Hash** | The MD5 hash value for the document. |
| 24 | **Confidential Stamp** | The confidential designation stamped on a document. |
| 25 | **Text Precedence** | The path that links an extracted text file to a Bates numbered document. |
| 26 | **FILE_PATH** | Link to the native file for a Bates numbered document. |